FILED'11 FEB 14 11:35USDC·ORE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

MARK ADCOCK,                              Civil No. 09-1301-AA
                                          OPINION AND ORDER
                Plaintiff,

        vs.

CITY OF CANBY, an Oregon
municipality, MELODY THOMPSON,
individually and in her
official capacity, WALT DANIELS,
individually and in his official
capacity, JOHN HENRI,
individually and in his official
capacity, JASON PADDEN,
individually and in his official
capacity, ROBERT BITTER,
individually and in his official
capacity, and JOHN KELLEY,
individually and in his official
capacity,

                Defendants.

PAGE 1 - OPINION AND ORDER

Martin C. Dolan
Megan Dolan
Dolan Griggs LLP
1130 SW Morrison, Suite 630
Portland, Oregon 97205
     Attorneys for plaintiff

Kimberlee C. Morrow
Hoffman, Hart & Wagner, LLP
Twentieth Floor
1000 SW Broadway
Portland, Oregon 97205
     Attorney for defendants

AIKEN, Chief Judge:

     Plaintiff filed a motion for partial summary judgment
pursuant to Fed. R. Civ. P. 56 on plaintiff's first, second, and
third claims.  Plaintiff's motion is denied.

     Defendants filed a motion for summary judgment pursuant to
Fed. R. Civ. P. 56 on each of plaintiff's claims.  Defendants'
motion is granted in part and denied in part.

                          BACKGROUND

     On June 4, 1999, plaintiff was hired as the City
Administrator for the City of Canby, Oregon (hereinafter "the
City").  Upon being hired as City Administrator, plaintiff and
the City entered into a valid and enforceable employment
contract, effective June 21, 1999.  The contract remained in
place throughout the term of plaintiff's employment with the
City.

     In May 2009, plaintiff's performance as City Administrator
was criticized.  As a result of these criticisms, the Canby City
Council required plaintiff to prepare a work improvement plan to
address and remedy the identified areas of concern.

Page 2 - OPINION AND ORDER

On August 24, 2009, plaintiff met in his office with the City's acting police chief, Jorge Tro.  During that meeting, plaintiff spoke loudly and used profanities.  Plaintiff's door remained open during this meeting, allowing several people within the building to overhear the exchange.  One of these people was City Attorney John Kelley.

Two days later, on August 26, the Council voted in open session to terminate plaintiff's employment contract with the City without cause, pursuant to Section 3 of the employment contract.  After plaintiff left the meeting, the City's mayor, Melody Thompson, commented that plaintiff's failure to recall the events that precipitated his termination left her "curious."  In response, defendant Kelley stated that he "believed" that plaintiff was subject to "rages" during which "he explodes and then he doesn't remember what he said."

On August 28, 2009, the City issued plaintiff a check for his final pay period and for six months of severance pay and benefits.  Plaintiff brings claims for: 1) breach of contract; 2) unpaid wages under Or. Rev. Stat. § 652.140; 3) penalty wages under Or. Rev. Stat. § 652.150; 4) defamation per se; and 5) violation of federal due process rights under 42 U.S.C. § 1983.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

Page 3 - OPINION AND ORDER

is entitles to a judgment as a matter of law." Fed. R. Civ. P.
56(c). Substantive law on an issue determines the materiality of
a fact. T.W. Electrical Serv., Inc. v. Pacific Electrical
Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether
the evidence is such that a reasonable jury could return a
verdict for the nonmoving party determined the authenticity of a
dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

The moving party has the burden of establishing the absence
of a genuine issue of material fact. Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986). If the moving party shows the absence
of a genuine issue of material fact, the nonmoving party must go
beyond the pleadings and identify facts which show a genuine
issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary
judgment motion: (1) all reasonable doubts as to the existence of
genuine issues of material fact should be resolved against the
moving party; and (2) all inferences to be drawn from the
underlying facts must be viewed in the light most favorable to
the nonmoving party. T.W. Electrical, 809 F.2d at 630.

DISCUSSION

Plaintiff alleges claims one through three against the City
and claims four and five against all defendants.

I.  Breach of Contract Claim

Plaintiff alleges that the City breached its employment
contract with him when it: issued a lump-sum payment equal to six

Page 4 - OPINION AND ORDER

months of plaintiff's salary and continuation of benefits payments rather than regular pay checks continuing for the severance period; failed and refused to provide plaintiff with sixty days of additional salary and continuation of benefits in lieu of giving him sixty days notice of its intent to terminate his employment; and failed to continue making contributions to plaintiff's PERS and ICMA retirement accounts. Thus, the determination of this issue hinges on the interpretation of the employment contract.

In determining the intent of the parties regarding a disputed term or provision of a contract, Oregon courts employ a three-step analysis. Yogman v. Parrott, 325 Or. 358, 361, 937 P.2d 1019 (1997). First, the court looks to the text of the disputed provision in the context of the document as a whole. Id. Whether the terms of a contract are ambiguous is a question of law. Id. A term or provision of a contract is ambiguous if it can reasonably be given more than one meaning. Pacific First Bank v. New Morgan Park Corp., 319 Or. 342, 347-8, 876 P.2d 761 (1994). The fact that a provision is silent on a particular issue does not make it ambiguous. Morton & Assoc., LLC v. McCain Foods USA, Inc., 226 Or. App. 532, 538, 204 P.3d 167 (2009). Summary judgment is only appropriate where the court finds no ambiguity at the first step of this analysis. PGF Care Ctr., Inc. v. Wolfe, 208 Or. App. 145, 151, 144 P.3d 983 (2006).

Page 5 - OPINION AND ORDER

A.  Breach for Lump Sum Payment and Lack of Continuation of Benefits

There is nothing in the contract that dictates the method in which severance payments must be made.   Because the contract is silent on this issue, I find that the City was free to pay out plaintiff's  severance  in  whatever  manner  it  deemed  most appropriate.  Accordingly, I find that defendants did not breach the contract by paying plaintiff a lump-sum.  Further, plaintiff admits that he was able to continue his insurance benefits through COBRA  and  never  experienced  a  lapse  in  coverage.    Because defendants  included  the  full  amount  of  plaintiff's  insurance premiums in the lump-sum severance payment in accordance with the express terms of the contract, and plaintiff suffered no adverse insurance action as a result of such means of payment, I find that defendants  satisfied  its  obligations  to  provide  for  the continuation of insurance benefits.

B.  Breach of Notice Provision

There is no dispute that plaintiff was terminated without cause, in accordance with Section 3(1) of the contract.  Section 4 of the contract addresses the issue of severance pay in the event plaintiff is terminated without cause.  Section 4A(3) states:

> In the event Employee is terminated by the City Council without cause during such time the Employee is willing and able to perform the duties of City Administrator, then in that event the Employer agrees to give Employee sixty (60) days notice of such termination and pay Employee . . . .six (6) months pay inclusive of the 60 days notice.

Here,  plaintiff  was  not  given  sixty  days  notice  of termination.    The  contract  dictates  that  notice  "shall  be  in

writing" and personally served upon the addressee or sent by certified mail. Defendants maintain that notice of termination was provided sixty-two days prior to termination by requiring plaintiff to prepare and submit a work improvement plan, on the condition that if the plan was not effectuated, plaintiff could be terminated.   I find that the work plan and any communications regarding it do not constitute a formal notice of termination as required by Section 4A of the contract.   The work improvement plan in fact may communicate a desire by the City to help plaintiff improve his conduct and ultimately retain his position.   Therefore, I find that defendants failed to give plaintiff sixty days notice of termination as required by the contract.

Nevertheless, the contract explicitly contemplates an alternative to the sixty day notice requirement.   Section 4A of the contract concludes by stating: "In lieu of giving the sixty (60) days notice, the Employer may at its option pay the employee an additional sixty (60) days severance pay and continuation of benefits."   It is unclear whether this provision confers upon plaintiff an entitlement to an additional sixty days severance pay, or if it simply confers a right to six months of severance pay in total.   Therefore, I find that the contract is ambiguous in this regard and presents a genuine issue of material fact.   Plaintiff's and defendants' cross-motions for summary judgment on the breach of contract claim are denied.

## II. Wage Claims

Plaintiff alleges that defendants' refusal to pay an additional sixty days of severance benefits in lieu of giving notice constitutes unpaid wages. Plaintiff further alleges that defendants' failure to pay all wages owing upon termination in a timely fashion entitles plaintiff to recover wage penalties and attorney fees.

An employer is required to pay a terminated employee all "wages earned and unpaid at the time of termination" no later than the "end of the first business day" after the termination. Or. Rev. Stat. § 652.140. The employee may be entitled to penalty wages if the employer "willfully" fails to make the payment by the end of the first business day after termination. Or. Rev. Stat. § 652.150.

Plaintiff argues that the allegedly owed severance pay constitutes "wages" under the statute. See State ex rel Nilsen v. Ore. Motor Ass'n, 248 Or. 133, 136, 432 P.2d 512 (1967) (earned vacation pay constitutes wages); Crofoot v. Columbia-Willamette Air Pollution Auth., 31 Or. App. 903, 907, 571 P.2d 1266 (1977) (plaintiff was entitled to penalty wages where defendant acknowledged that plaintiff earned four weeks of severance compensation but refused to pay even after plaintiff's repeated requests); Chvatal v. U.S. Nat'l Bank of Ore., 285 Or. 11, 17, 589 P.2d 726 (1979) (department manager's claim for promised but unpaid vacation and severance benefits was an action for wages).

Page 8 - OPINION AND ORDER

I find that the case at bar is distinguishable from the cases cited above. There, the claims regarded wages that were clearly "earned and unpaid" at the time of termination. Here, plaintiff's wage claims are based solely on the negotiated terms of his contract. Further, plaintiff does not dispute that his severance payment was timely. Rather, plaintiff contends only that his severance payment should have been greater.

Consequently, whether the pay in question constitutes "wages" is immaterial. Plaintiff's claim lies in contract rather than "earned and unpaid" compensation. See Bruce v. S.M. Motor Co., Inc., 81 Or. App. 227, 230, 724 P.2d 911 (1986). Evidence of this can be found in the contract itself. The general severance provision, Section 4A(3), relates to any "earned" severance, as the amount of severance is linked to years of service and performance. The additional payment that plaintiff is claiming entitlement to, however, is at defendants' election, and has no bearing on plaintiff's tenure. Thus, such payment is not "earned" by an employee, but rather agreed to by the employer. As such, plaintiff's claims lie outside of the Oregon wage statutory scheme. See Jones v. N.W. Telemarketing, Inc., 2000 WL 568352, 3 (D.Or. 2000) (unreported).

Accordingly, I find that plaintiff collected all "earned" compensation due to him under the express terms of the contract. As a matter of law, I find that plaintiff's claim for additional severance payment lies in contract rather than under the wage collection statutes. Therefore, plaintiff's motion for partial

Page 9 - OPINION AND ORDER

summary judgment is denied and defendants' motion for summary judgment is granted in part regarding plaintiff's second and third claims.

III.  Defamation Per Se

Plaintiff alleges a defamation claim against all defendants. There is no dispute that the individually named defendants were acting within the scope of their employment when the allegedly defamatory statement was made.  Therefore, this is an action against the public body only.  Or. Rev. Stat. § 30.265(1).  Thus, summary judgment is granted on plaintiff's defamation claim as to individual defendants Thompson, Daniels, Bitter, Henri, Padden and Kelley.

To establish a prima facie defamation claim, a plaintiff must present evidence sufficient to show that the defendant published to a third person a defamatory statement about the plaintiff.  Affolter v. Baugh Const. Ore., Inc., 183 Or. App. 198, 202, 51 P.3d 642 (2002).  A defamatory statement is one that would subject another to "hatred, contempt, or ridicule . . . [or] tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other]."  Id. Defamatory statements that attack a person in their professional or employment capacity are actionable per se when they attack specific characteristics that pertain to plaintiff's field of employment.  L & D of Ore., Inc. v. American States Ins. Co., 171 Or. App. 17, 26, 14 P.3d 617 (2000).

Page 10 - OPINION AND ORDER

Here, plaintiff's defamation claim is based on a statement made by City Attorney, John Kelley.  After plaintiff was terminated by the Council, Mayor Thompson stated that plaintiff's questions "left her a little curious."  According to the special meeting minutes, Kelley responded that he "believe[d] when [Mr. Adcock] went into rages . . . he explodes and then he doesn't remember what he said."  None of the other officials present expressed agreement, or even spoke about Kelley's statement.

On August 27, 2009, the Canby Herald published an article online, summarizing the dialogue about plaintiff's alleged "rages" as follows: "[t]he council later discussed the issue, agreeing that when Adcock went 'into those rages he explodes and then he doesn't remember he said.'"  Plaintiff alleges that these facts illustrate that defendants made statements implying that he is mentally unfit to perform his job, thereby constituting defamation per se.  Further, plaintiff alleges that this statement has prejudiced his ability to gain future employment.

Defendants assert that the allegedly defamatory statement was true.  Defendants also assert that the allegedly defamatory statement was opinion, and therefore not actionable because it is constitutionally protected.  In addition, defendants assert that the statement was privileged.  Defendants rely on any and all of these grounds for summary judgment.

### A. The Statement was True

Unless a statement constitutes defamation per se, a plaintiff must also allege that the statement was false. Marleau v. Truck Ins. Exchange, 333 Or. 82, 94, 37 P.3d 148 (2001).

The parties dispute the truth of whether plaintiff's outburst at acting chief of police Jorge Tro constituted a "rage." Plaintiff admits that he yelled at Tro and addressed him with profanities. Further, Kelley witnessed plaintiff's outburst firsthand, and was the only person to comment on it. However, the other defendants admit that they had no basis to believe the truth of Kelley's statement. Based on this evidence, I find that the record establishes a disputed area of material fact in regard to the truth of Kelley's statement.

### B. The Statement was Pure Opinion

A statement is considered "pure opinion" when it is not supported by disclosed or undisclosed facts. Milkovich v. Lorian Journal Co., 497 U.S. 1, 20 (1990). Thus, the inquiry again hinges on whether defendants have established that Kelley's statement was factually true. As stated above, I find that the record establishes a disputed area of material fact in regard to the truth of Kelley's statement.

### C. The Statement was Privileged

Defendants argue that the statement was privileged under constitutional and state law.

Page 12 - OPINION AND ORDER

### i. Constitutional Privilege

Where a plaintiff is a public figure or a public official and the matter involves a question of public interest, the First Amendment's protection of expression permits liability to attach only on a showing of actual malice. Cooper v. Portland General Elec. Corp., 110 Or. App. 581, 586, 824 P.2d 1152 (1992). "Actual malice" requires a showing that the defendant knew of the falsity of the statement or acted in reckless disregard of whether it was true or false. Id. (citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-8 (1964); Curtis Publishing Co. v. Butts, 388 U.S. 130 (1967)).

It is undisputed that plaintiff was a public official. The issue is whether plaintiff's employment was a matter of public concern. Defendants proffer evidence that plaintiff's employment was a matter of public concern – namely that Mayor Thompson received numerous e-mails from local groups and residents criticizing plaintiff's performance and urging his dismissal. Further, it is undisputed that plaintiff's termination was covered in several newspapers, suggesting that the matter was of interest to the public.

Plaintiff asserts that no public interest was served through Kelley's remark, as the comment had no bearing on defendants' decision to terminate the plaintiff. Further, plaintiff suggests that the comment was not directly related to his role as a public official, but rather mere gossip.

I find that there exists sufficient evidence to provide an
inference that Kelley's comment did not involve a question of
public interest.  Whether plaintiff's termination was a matter of
public concern remains disputed, therefore, I decline to find
whether there was "actual malice."

### ii.   State Law Privilege

Oregon recognizes two defenses to an action for defamation:
absolute privilege and qualified privilege.  Johnson v. Brown,
193 Or. App. 375, 380, 91 P.3d 741 (2004).  Absolute privilege is
a complete bar to a claim of defamation and precludes liability
regardless of the defendant's state of mind.  Id.  Qualified
privilege can be overcome if the allegedly defamatory statements
were made in bad faith or with malice.  Id.

### a.   Absolute Privilege

Absolute privilege arises only in governmental settings, and
applies to "communications made in the discharge of a duty under
express authority of law."  Id.  As stated above, there is no
dispute that Kelley qualifies as a public official who is
entitled to assert this privilege as a defense.  The crux of the
issue is whether Kelley made the allegedly defamatory statement
during the performance of official duties.  See Beason v.
Harcleroad, 105 Or. App. 376, 385, 805 P.2d 700 (1991).

Defendants urge that Kelley was performing an official duty,
as he made the statement while "evaluating employee conduct."
Moreover, Kelley's job description includes "advising council,"

Page 14 - OPINION AND ORDER

suggesting that his comments were made while performing the functions of his job as City Attorney. However, at the time that the communication was made, plaintiff was no longer an employee. As such, and as plaintiff suggests, there was arguably no longer an official need to evaluate his conduct. Further, Kelley's statement seemed to occur more within a casual conversation rather than in furtherance of official business. Thus, a question of genuine issue of material fact remains as to whether Kelley's comment was made pursuant to the performance of an official duty.

### b. Qualified Privilege

Qualified privilege to make a defamatory statement arises when the statement "is made to protect the interests of the plaintiff's employer or it is on a subject of mutual concern to the defendant and those to whom it is made." Lewis v. Carson Oil Co., 204 Or. App. 99, 103, 127 P.3d 1207 (2006). The parties fail to cite to any authority regarding what constitutes a "subject of mutual concern." However, I find that discussion of a recently terminated employee during a council session is a subject of mutual concern. Accordingly, I find that Kelley's comment is protected by qualified privilege. Thus, the disposition of this issue hinges on whether qualified privilege is lost due to abuse.

The parties disagree about the applicable standard for when the privilege is lost due to publisher abuse. Plaintiff urges that Benassi governs, wherein four broad circumstances of abuse

Page 15 - OPINION AND ORDER

are articulated.  Benassi v. Georgia-Pacific, 62 Or. App. 698, 703, 662 P.2d 760 (1983).  Conversely, defendants argue that Johnson governs, in which abuse occurs only when the publisher makes the statement in bad faith or with actual malice.  Johnson, 193 Or. App. at 380.  I find that Benassi is inapplicable, as the standards stated therein were only in regard to private sector employees.  The standard articulated in Johnson regards the public sector, and as such will govern here.

Thus, the issue is whether the statement was made in bad faith or with actual malice.  Defendants rely on the fact that Kelley and plaintiff had worked together for ten years without incident, and that Kelley advised the Council on plaintiff's work improvement plan in an effort to avoid plaintiff's termination. Pursuant to these facts, defendants assert that the "rage" statement does not reflect malice towards plaintiff, but instead merely an explanation for plaintiff's behavior.

Conversely, plaintiff offers evidence that Kelley was acting recklessly when he made the statement in question.  Plaintiff argues that Kelley's personal observations could lead him to believe only that plaintiff was angry and used illicit language. However, Kelley stated that plaintiff goes into "rages . . . and then doesn't remember what he said," without verifying the accuracy of that statement.  Plaintiff argues that it would be permissible to infer that Kelley lacked reasonable grounds to believe his own statement, and accordingly was acting recklessly when he spoke.  See Wallilus v. Dymowski, 323 Or. 337, 357, 918

Page 16 - OPINION AND ORDER

P.2d 755 (1996).  While I find this constitutes little evidence of bad faith or malice, I am required to draw all inferences in the light most favorable to plaintiff.  Consequently, I find that plaintiff has introduced sufficient evidence to establish a genuine issue of material fact.

Therefore, defendants' motion for summary judgment is denied as to plaintiff's fourth claim.

IV.  Due Process Claim

Plaintiff's fifth claim alleges a violation of due process under 42 U.S.C. § 1983 against all defendants.  Plaintiff's claim is based on defendants alleged violation of his Fourteenth Amendment Due Process rights, premised on the City's failure to provide plaintiff with a "name clearing hearing" in the wake of Kelley's statement.  Government officials who have been sued in their official capacities, and in the course of performing discretionary duties of their office, are allowed under § 1983 to assert an affirmative defense of qualified immunity.  Butler v. Elle, 281 F.3d 1014, 1021 (9th Cir. 2002).

A.  Claim Against the Individually Named Defendants

The parties agree that a terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for termination is publicly disclosed.  See Board of Regents v. Roth, 408 U.S. 564, 573 (1972); see also Cox v. Roskelley, 359 F.3d 1105, 1110 (9th Cir. 2004).

Page 17 - OPINION AND ORDER

Regardless, defendants argue that plaintiff is not entitled
to a name clearing hearing because he did not file a deprivation
of liberty interest claim prior to this lawsuit.  Defendants
claim that because plaintiff never sought a hearing, his due
process was never denied.

Ninth Circuit law is clear that to trigger the procedural
protections of due process attendant to a properly presented
liberty interest claim a plaintiff must show that: (1) the
accuracy of the charge is contested; (2) there is some public
disclosure of the charge; and (3) the charge is made in
connection with the termination of employment.  See Brady v.
Gebbie, 859 F.2d 1543, 1554 (9th Cir. 1988), cert. denied, 489
U.S. 110 (1989); see also Tibbets v. State Acc. Ins. Fund, 2008
WL 4144441, (D.Or., Sept. 4, 2008).  There can be no dispute that
plaintiff has alleged facts that meet all three of the above
listed elements.  Accordingly, I find that plaintiff's failure to
request a name clearing hearing prior to this lawsuit is not
dispositive on the issue of summary judgment.

Moreover, I find that plaintiff has alleged facts sufficient
to create a genuine issue of material fact regarding whether
Kelley's statement was stigmatizing.  A statement is sufficiently
stigmatizing where it suggests that the plaintiff was
psychologically unbalanced or implied mental unfitness for the
job.  Campanelli v. Bockrath, 100 F.3d 1476, 1480 (9th Cir.
1996).  Defendants maintain that Kelley was merely giving his

Page 18 - OPINION AND ORDER

opinion of plaintiff's conduct and not questioning his honesty or morality.

Conversely, plaintiff asserts that someone listening to the comments or reading the minutes or newspaper could reasonably assume that plaintiff's termination was connected with his rages, violent temper, blackouts, etc. As such, plaintiff alleges that the "rage" statement goes beyond a statement of mere incompetence or failure to get along, and instead rises to the level of stigma. As evidence of this stigma, plaintiff points to the fact that he has had only negative or no response to his many employment applications. Defendants, however, allege other reasons for plaintiff's termination, reasons which plaintiff does not challenge, that could be equally responsible for his continued unemployment. Regardless, I find plaintiff has introduced sufficient evidence to establish a genuine issue of material fact on this issue.

Defendants' final argument in favor of summary judgment is that the individually named defendants are entitled to qualified immunity. The qualified immunity defense allows for errors in judgment and protects "all but the plainly incompetent or those that knowingly violate the law," and applies regardless of whether the error is a mistake of law or fact. Pearson v. Callahan, 555 U.S. ___, 129 S.Ct. 808, 815 (2009); see also Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009).

Qualified immunity does not apply if a court finds that the alleged facts make out a violation of a constitutional right and

Page 19 - OPINION AND ORDER

that the right at issue was "clearly established" at the time of the alleged conduct.  Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Pearson, 129 S.Ct. at 818 (these elements can be considered in any order).  As discussed above, plaintiff has alleged facts that the failure to provide a name clearing hearing was a violation of plaintiff's due process rights.  Also, plaintiff has identified evidence that clearly establishes that public employers may not publicly disseminate stigmatizing statements regarding a public employee, without giving that employee notice and an opportunity to respond.  See Roth, 408 U.S. at 573; Brady, 859 F.2d at 1553.  Thus, I find a genuine issue of material fact exists on this issue.

### B.  Claim Against the City

In order to maintain a claim pursuant to 42 U.S.C. § 1983 against a city, the plaintiff must allege and prove that the alleged offending actions were the result of an official policy or custom of the municipality.  Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005).  There are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final

policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."  Id.

In this case, it is not disputed that the individual council members have the final policymaking authority with respect to nearly all City business, including plaintiff's termination. Further, it is undisputed that individual defendants admit that they were acting within the scope of their employment when plaintiff was terminated and when the "rages" statement was made. However, the parties dispute whether the failure to provide a name clearing hearing in response to the "rages" statement represented "official policy in the area of the decision." Plaintiff urges that, because the "rages" statement was made in regard to the circumstance that led up to plaintiff's termination, it constitutes an "official policy in the area of the decision."  Defendants maintain that the allegedly stigmatizing comment was merely a response to a concern raised by the mayor.

I find sufficient evidence in the record to establish a genuine issue of material fact as to whether the failure to provide a hearing was official policy.

Therefore, defendants' motion for summary judgment is denied with respect to plaintiff's fifth claim.

### CONCLUSION

Plaintiff's motion for partial summary judgment (doc. 50) is DENIED.  Defendants' motion for summary judgment (doc. 57) is GRANTED as to the plaintiff's second and third claims, and DENIED

Page 21 - OPINION AND ORDER

as to all other claims.  Further, the parties request for oral argument is DENIED as unnecessary.

IT IS SO ORDERED.

Dated this $\underline{//}$ of February 2011.

Ann Aiken
United States District Judge